UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WALKER,

                    Plaintiff,

          -v.-

THE CITY OF NEW YORK, CAROLYN
SANDERS, NADENE PINNOCK, VICKI
BURGESS, NINA EDWARDS, JOHN
AND JANE DOES 1 THRU 20, *in their
individual and official capacities*,
CYNTHIA BRAUN, NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION,

                    Defendants.

17 Civ. 9414 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

The instant matter concerns allegations of discrimination and constitutional violations that have been brought by a legally blind inmate to redress incidents that occurred while he was detained at the Rikers Island correctional facility in 2017. Defendants have responded with a motion to dismiss, arguing procedural and substantive infirmities in Plaintiff's pleadings that cannot be redressed by amendment. For the reasons stated in this Opinion, certain of Plaintiff's claims under the Americans with Disabilities Act of 1990 (the "ADA") survive, and the remainder of Plaintiff's claims are dismissed with prejudice.

## A.     Factual Background

For purposes of this motion, the Court accepts as true the well-pleaded allegations of Plaintiff's pleadings.  Plaintiff, who is proceeding *pro se*, is legally blind; in 2017, he was detained at the Otis Bantum Correctional Center (the "OBCC"), and then at the North Infirmary Command (the "NIC"), both of which are part of the Rikers Island correctional facility complex in New York City. (Compl. ¶¶ 1-3, 29-32).[2]  Defendant Cynthia Braun is the Commissioner of the New York City Department of Correction (the "DOC"); she replaces Joseph Ponte, the former DOC Commissioner whom Plaintiff initially named in the Complaint.  (Compl. ¶ 5; *see* Supp. Compl. Caption).  Defendant Carolyn Sanders is the Warden and highest ranking official at NIC.  (Compl. ¶ 6). Defendant Nadene Pinnock is the Deputy General Counsel of the DOC.  (*Id.* at

---

[1]     In consideration of Plaintiff's *pro se* status, the Court has reviewed several of Plaintiff's submissions for factual allegations, including his complaint (the "Complaint" or "Compl." (Dkt. #2)), as well as various supplemental pleadings filed on this Court's electronic case filing system on March 20, 2018 (Dkt. #16 (the "March Supplemental Complaint" or "Mar. Supp. Compl.")), April 16, 2018 (the "April Supplemental Complaint" or "Apr. Supp. Compl." (Dkt. #25)), May 3, 2018 (the "May Supplemental Complaint" or "May Supp. Compl." (Dkt. #26)), and December 19, 2018 (the "December Supplemental Complaint" or "Dec. Supp. Compl." (Dkt. #41)).  Several of these documents were filed in response to pre-motion and motion-related submissions by Defendants; however intended, the Court believes them to be best construed as supplements to the Complaint.  For convenience, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #37), to Plaintiff's opposition to the motion to dismiss as "Pl. Opp." (Dkt. #38), and to Defendants' reply as "Def. Reply" (Dkt. #39).

[2]     The New York City Department of Correction is a nonsuable entity, while the Health and Hospitals Corporation ("HHC") is a suable entity.  *See* N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); N.Y. Unconsol. L. § 7385(1) (giving HHC the power "[t]o sue and be sued").

¶ 7).  Defendant Vicki Burgess is a DOC correction officer.  (*Id.* at ¶ 9).

Defendant Nina Edwards is a DOC disability rights coordinator.  (*Id.* at ¶ 10).

Prior to entering DOC custody, Plaintiff sustained injuries that included "[b]lindness in both eyes, broken finger, [s]titches in right leg open wounds (tibia fibula), swelling and lacerations of facial area closed eye, contusion of left leg, high fever, and dizziness." (Mar. Supp. Compl. ¶ 6).  According to Plaintiff, these symptoms were initially ignored, and Plaintiff was denied medical care over the course of 32 hours, while he was in the new admittance holding pen at Rikers Island.  (*Id.* at ¶ 7).  Plaintiff was eventually transferred to a medical unit within OBCC and provided with crutches.  (*Id.*).  Plaintiff there informed the medical staff of his pre-existing condition of advanced glaucoma.  (*Id.*).

From January 8, 2017, until January 20, 2017, Plaintiff was housed in the Security Risk Group (or "SRG") at OBCC, in an upper dormitory reached by three flights of stairs, along with other inmates who were gang members, despite Plaintiff's having "injuries to the right leg and contusions on the left leg with crutches and a broken finger and [being] clearly disabled[.]" (Compl. ¶ 29; Mar. Supp. Compl. ¶¶ 7-8).[3]  Plaintiff was also transported on a general population bus, rather than a "para van transport" for people with disabilities. (Compl. ¶ 31).  Plaintiff feared for his safety, causing him "difficulties using the

---

[3]     Plaintiff does not explain how he came to be housed initially in SRG.  From Plaintiff's submissions, and from documents referenced in or attached as exhibits to those submissions, the Court understands that Plaintiff was then being detained at Rikers Island as a result of two indictments charging him with robbery, burglary, and other offenses alleged to have been committed in September 2016 and January 2017.  (*See* Pl. Opp., Ex. A (opinion denying motion pursuant to N.Y. Penal Law § 440.20 (the "440.20 Opinion"))).

rest room, [using the] telephone, writing letters, showering, safe keeping personal items, and protecting himself from harm." (Mar. Supp. Compl. ¶ 8). Plaintiff "repeatedly sign[ed] up for sick-call and filed complaints to try to get properly housed in handicap housing[.]" (Compl. ¶ 31).[4] After placing sick calls daily, and lodging complaints repeatedly, Plaintiff was eventually examined by an eye specialist, who diagnosed him as legally blind. (Mar. Supp. Compl. ¶ 8; *see also* Compl., Ex. E (September 8, 2017 diagnosis of legal blindness by physician at NIC)).

On January 20, 2017, Plaintiff was transferred to NIC, where he was "informed that handicap housing was shut down," and placed in a medical unit dormitory. (Compl. ¶ 32; Mar. Supp. Compl. ¶ 10). While in the medical unit, Plaintiff was issued a "short" blind mobility cane. (Compl. ¶ 33). Plaintiff alleges that he should have been issued a "tall" blind mobility cane, and that the cane provided to him "was too short" for him to use. (*Id.*). Plaintiff also lacked an inmate mobility assistant, or sighted guide, to assist him in his movements around the facility. (*Id.* at ¶ 34). The Court understands that Plaintiff is not only challenging prison officials' failure to act on his requests for accommodations, but also their failure to advise him of available resources for blind inmates. As stated in the pleadings, Plaintiff was compelled to "[c]ontinue on crutches, without [a] mobility guide, social worker, *or information on Reasonable Accommodations* within [the] facility [which] should have

---

4  For ease of reference, the Court will at times repeat Plaintiff's nomenclature of "handicap housing" to refer to housing for people with disabilities at Rikers Island.

consist[ed] of, *free matter for the blind mail, mobility guide, Blind cane, video*

*Court, and devices within facility law library, corrective lenses, social worker,*

*phone system, large lettering commissary purchases, [and] Braille courses."*

(Mar. Supp. Compl. ¶ 10 (first emphasis added, second emphasis in original)).

Plaintiff was also allegedly denied access to assistive devices in the law

library, and this denial forms a significant portion of his factual allegations

against Defendants.[5]  According to the operative Complaint:

> Plaintiff went to the law library, and asked Defendant
> VICKI BURGESS, the law library officer, about
> assistive devices to utilize for "legally blind" and
> visually impaired inmates.  Plaintiff showed the
> Defendant his grievance about reasonable
> accommodations and letter from [Deputy] of Programs
> Ms. Chaplin, and Defendant NINA EDWARDS about
> assistive devices being in the law library, and
> Defendant BURGESS denied plaintiff from utilizing the
> assistive devices, stating his medical documents of
> being legally blind and paper work had no[] merit, and
> that he could not utilize any assistive devices which
> fall[] under reasonable accommodations.

(Compl. ¶ 36).  Plaintiff's March Supplemental Complaint further specifies:

> In and around [July 20, 2017,] plaintiff entered the
> Law library at (NIC) North Infirmary Command.
> Seeking assistance in utilizing devices, under
> Reasonable Accommodations relating to visual
> Impairment, such as qualified readers, taped texts, or
> other effective methods available to individuals with
> visual impairment, acquisition, or modification of
> equipment or devices.  Upon entering[, Plaintiff]
> received little if any assistance.

---

[5]  Plaintiff does not indicate whether his law library claims pertain to the libraries at OBCC, NIC, or both.  From the documents attached to Plaintiff's pleadings, the Court understands the claims to pertain to the NIC library.  Identifying the precise facility or facilities to which Plaintiff's claims pertain is unnecessary for the Court's evaluation of those claims at this stage of the proceeding.

(Mar. Supp. Compl. ¶ 29).

Thereafter, Plaintiff contacted Defendant Nina Edwards to request reasonable accommodations. (Compl. ¶ 37). According to the Complaint, "[w]hen plaintiff contacted defendant NINA EDWARDS, she referred the request for reasonable accommodations to [another person] when she [was] supposed to have handled it herself[,]" suggesting that Defendant Edwards may have delayed or impaired Plaintiff's attempts to access accommodations. (*Id.*). Additional information is provided in Plaintiff's March Supplemental Complaint:

> [A] law Clerk directed him to [a] posting containing Nina Edwards's incorrect information of location. Plaintiff addresse[d] a letter to Nina Edwards resulting in return to sender due to incorrect address.... [P]revious complaints ... were ignore[d] at the hands of Nina Edwards. Plaintiff filed a grievance. On [August 13, 2017,] due to no response [Plaintiff] filed a second grievance involving reasonable accommodations within [the] court system ... and communication barriers. (DOCS) fail[ed] to make such facilities privileges, advantages, or Accommodations available through alternative methods.... In and around the date of [August 18, 2017, Plaintiff] receive[d] [a] visit from *Deputy of Programs Ms. Chaplin*. [Plaintiff stated his] grievance pertaining to devices, under Reasonable Accommodations within the facility law library.... In and around [August 18, 2017, Plaintiff] entered the law library and was told by [Defendant Burgess that she was] unaware of any access to devices[.]

(Mar. Supp. Compl. ¶ 29). Plaintiff filed a grievance with both the superintendent and Defendant Edwards in or about August 30, 2017, to no avail. (*Id.*). Plaintiff alleges here that his "inability to utilize the law library [caused him to] suffer[] injuries" because it impeded his ability to advocate for

himself in his legal proceedings and left him "[u]nable to determine contents of documents." (*Id.* at ¶¶ 33-34).

Copies of Plaintiff's requests for reasonable accommodations of his disability at the law library are attached to his pleadings. The first request is contained in an Inmate Grievance and Request Program ("IGRP") statement form dated July 20, 2017, wherein Plaintiff stated: "I am requesting a device to use inside of [the] law library to read ... documents because I'm unable to see due to being legally blind." (Compl., Ex. 1 at 4). Also attached is a response, dated August 18, 2017, which states: "Please be advised that the Disability Rights Coordinator for Inmates has received your request for an accommodation ... you will be informed of a determination as soon as possible." (*Id.* at 5).

The second grievance, an appeal to the Warden of NIC dated August 18, 2017, states:

> I have been informed that the assistive devices [were] in the law library, however the law library officer has stated that I'm unable to use it and I've been denied reasonable accommodations Under the American with Disabilities Act, the ADA coordinator was suppose[d] to assure that I got reasonable accommodations, and suppose[d] to respond better to request for it[.]

(Compl., Ex. 1 at 6).

Plaintiff's third grievance, an appeal to the DOC dated August 31, 2017, states:

> There is no assistive device in the law library that "legally Blind" and visually impaired inmates can utilize[], I was told that there was some in the law library then told by the law library officer BURGESS

that I couldn't utilize the assistive devices which she discriminated against me in regards to programs and services available.... I would like to know exactly what reasonable accommodations purchases were made ... because there [are] no assistive devices in the law library and I was denied from utilizing them by law library officer Burgess.

(Compl., Ex. 1 at 7-8).[6]

Among the exhibits to Plaintiff's December Supplemental Complaint is a different IGRP form, dated August 13, 2017, in which Plaintiff grieves the lack of reasonable accommodations in his housing:

I am "legally blind" and requesting reasonable accommodations of a mobility guide to assist me with my daily living[. T]here is suppose[d] to be two inmates employed to assist legally blind and visually impaired inmates with their daily living however the disability Dorm is closed down and in Dorm 2 they have dis[a]bled inmates with inmate assistants available].] I need help. [A]lso I am being transported via regu[lar] bus when I [am supposed] to be transported by para van transport with the shoulder strap, in accordance with the "ADA" requirements.

(Dec. Supp. Compl., Ex. D).

Separately, Plaintiff alleges that the NIC facility lacked several accommodations for inmates in wheelchairs or who have difficulty hearing, such as non-slip shower mats and wheelchair-accessible exits, handrails, and proper ramps. (Compl. ¶¶ 28-29, 42-58). Plaintiff also alleges that he was retaliated against for filing complaints and grievances. (*Id.* at ¶ 77).

---

[6]     Also attached to the Complaint is Plaintiff's completed "request for reasonable accommodations for inmates with sensorial disabilities form," dated October 2, 2017. (Compl., Ex. 1 at 18). However, as the form makes clear, this request was submitted to officials at the Sullivan Correctional Facility, where Plaintiff is currently incarcerated, and not Rikers Island.

**B.    Procedural Background**

**1.    Plaintiff's Pleadings**

Plaintiff commenced this action on November 30, 2017.  (Dkt. #2).  He brings claims under 42 U.S.C. § 1983; Title II of the ADA, 29 U.S.C. §§ 12131-12134, 12141-12150, 12160-12165; and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  (Compl. ¶¶ 18, 67-80).  Plaintiff also brings claims for contempt of court, and state-law claims for negligence.  (*Id.* at ¶¶ 81-88, 94-97).  He seeks injunctive, declaratory, and monetary relief.  (*Id.* at ¶¶ 98-101).

On March 20, 2018, Plaintiff filed the first of several supplemental factual allegations (Dkt. #16), which he later informed the Court were not intended to replace the original Complaint (*see* Dkt. #20).  Given Plaintiff's *pro se* status, the Court will nonetheless consider the facts alleged in Plaintiff's later submissions as supplemental to his Complaint.  Additional factual submissions were filed on April 16, 2018 (Dkt. #25), and May 3, 2018 (Dkt. #26).

On December 19, 2018, after briefing on the motion to dismiss had concluded, Plaintiff submitted an additional set of factual allegations, entitled "Supporting Evidence of Federal Claims."  (Dkt. #41).  The document contains many of the same allegations, and attaches many of the same exhibits, as his prior two submissions.  However, as described above, it contains an additional IGRP form from August 12, 2017, in which Plaintiff seeks a mobility guide and "para van" transportation.

### 2.     The Instant Motion

On July 30, 2018, Defendants moved to dismiss the Complaint in its entirety.  (Dkt. #35).  Plaintiff submitted a memorandum in opposition on August 13, 2018 (Dkt. #38), and Defendants replied on October 5, 2018 (Dkt. #39).

## DISCUSSION

### A.     Applicable Law

When considering a motion to dismiss under Rule 12(b)(6), the court must "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal citations and quotation marks omitted).  A claimant prevails on a motion to dismiss if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

In light of Plaintiff's *pro se* status, the Court will construe his pleadings "liberally and 'interpret them to raise the strongest arguments that they suggest.'"  *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017).  In addition, the Court has considered factual allegations and exhibits submitted by Plaintiff in the various submissions he has filed after the Complaint.  *See generally Walker* v. *Schult*,

717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). And while a plaintiff's pleadings are typically limited to the complaint itself and any documents "attached to it as an exhibit or any statements or documents incorporated in it by reference[,]" *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks and citation omitted), this Court has also considered documents submitted with Plaintiff's moving papers, *see Gill* v. *Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (upholding district court's consideration of an affidavit filed by a *pro se* plaintiff in opposition to a motion to dismiss).

**B.    Analysis**

### 1.    Plaintiff's Claims for Declaratory and Injunctive Relief Are Dismissed as Moot

As a preliminary matter, the Court considers whether any of Plaintiff's claims is moot because Plaintiff is no longer in DOC custody. "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility. On the other hand, the transfer does not moot an action for damages." *Prins* v. *Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). "[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin* v. *Goord*, 467 F.3d 263, 272 (2d Cir. 2006). (*See also* Def. Br. 21).

Plaintiff acknowledges that he is "presently under the care, custody and control of ... Sullivan Correctional Facility" in Fallsburg, New York. (Pl.

Opp. 1). As Plaintiff is no longer in the custody of the DOC, his claims for declaratory and injunctive relief are dismissed.

### 2. Plaintiff's Claims Under the ADA Survive in Part and Are Dismissed in Part

#### a. Pleading an Adequate Claim Under the ADA

To state a claim under the ADA, plaintiffs must show "that [i] they are 'qualified individuals' with a disability; [ii] that the defendants are subject to the ADA; and [iii] that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *accord Bolmer* v. *Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010).[7] Further, in this Circuit, a plaintiff generally bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial. *See Graves* v. *Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) ("This request would matter because, generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." (internal citation and quotation marks omitted)); *cf. United Spinal Ass'n* v. *Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 626 (S.D.N.Y. 2012) ("Rather, to demonstrate that individuals were deprived of

---

[7] Plaintiff's claims under the ADA and the Rehabilitation Act are evaluated using the same standards. *See Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *cf. Logan* v. *Matveevskii*, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014) (discussing differences between ADA and Rehabilitation Act, including that Rehabilitation Act applies solely to federally-funded programs and is limited to denials of benefits "solely by reason of … disability" (citing 29 U.S.C. § 794(a))). The Court's references in this section of the Opinion to Plaintiff's claims under the ADA should be read to include his correlative Rehabilitation Act claims.

an opportunity or benefit or discriminated against *by reason* of their disabilities, Plaintiffs must demonstrate that Defendants failed to undertake some feasible measure to improve accessibility[.]"), *aff'd sub nom. Disabled in Action* v. *Bd. of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014).

### b. Plaintiff's ADA Claims Against the Individual Defendants Are Dismissed

"[P]laintiffs may not bring suits for *money* damages against individual defendants under the ADA." *Askins* v. *New York City Transit,* No. 11 Civ. 6371 (PGG), 2013 WL 142007, at *4 (S.D.N.Y. Jan. 8, 2013) (emphasis added) (collecting authorities); *see also* 42 U.S.C. §§ 12131-12132 (stating that the ADA prohibits discrimination by public entities, not by individuals).  Instead, "Title II and Rehabilitation Act suits for prospective injunctive relief may ... proceed against individual officers in their official capacity." *Harris* v. *Mills,* 572 F.3d 66, 72 (2d Cir. 2009).

Defendants argue for dismissal of the ADA claims against the individual Defendants on the basis that Plaintiff "cannot assert ADA claims against individual defendants." (Def. Br. 14).  Defendants are correct that, to the extent that Plaintiff seeks money damages against the individual Defendants under the ADA, such claims must be, and are, dismissed.  *See* 42 U.S.C. §§ 12131-12132; *Askins*, 2013 WL 142007, at *4.  And while the ADA could support claims for injunctive relief against individual defendants, *see Harris*, 572 F.3d at 72, such claims have been mooted in this case by Plaintiff's transfer from the facilities where the conduct complained of is alleged to have

taken place. Therefore, Plaintiff's ADA claims against the individual

Defendants are dismissed.

### c. Plaintiff's ADA Claims Against the Institutional Defendants Survive in Part and Are Dismissed in Part

Plaintiff's ADA claims against the institutional Defendants for monetary

damages remain to be considered. Defendants concede that Plaintiff is a

"qualified individual with a disability as defined by the ADA," and that the

institutional Defendants — DOC (subsumed by Defendant City of New York)

and HHC — are subject to the ADA. (Def. Br. 16). However, Defendants

maintain that Plaintiff has failed adequately to plead the third, denial-of-

services prong of an ADA claim. (*Id.*). On that prong, Plaintiff's pleadings

present three categories of ADA-related allegations that the Court will address

in turn: (i) failure to provide assistive devices in the law library; (ii) failure to

provide accommodations with respect to Plaintiff's housing, including a

mobility guide, separate housing, a longer cane, and separate busing, as well

as a failure to provide free postal services; and (iii) non-compliance with ADA

guidelines and alleged contempt of court.

### i. Plaintiff's ADA Claim for Denial of Reasonable Accommodations in the Law Library Survives

Plaintiff alleges that he requested access to assistive devices in the law

library, and that he was not provided with such devices, including specifically

that Defendant Vicky Burgess denied him access to such devices. (Compl.

¶ 36; *see also* Pl. Opp. 14). Plaintiff filed multiple written grievances seeking

access to the law library, copies of which are appended to the Complaint.

14

(Compl. ¶ 36, Ex. 1). He also showed Defendant Burgess a letter indicating the existence of the assistive devices, all without success. (*Id.* at ¶ 36). Plaintiff contends that he was "unlawfully denied to utilize visual impairment devices during a critical stage of his criminal proceedings[.]" (Pl. Opp. 13).

Relatedly, Plaintiff argues that the law library "falls below any known acceptable standard" because it lacks sufficient volumes, and has "outdated software, inoperable typewriters, [and] limited employees with neither knowledgeable insight nor law experience." (Pl. Opp. 13). In Plaintiff's view, "reasonable accommodations for his visual impairment [include] devices such as *Sensorial disability law clerk, computers with Thin Client software, zoom-in features, and key boards with large case lettering, also free matter for the blind postage.*" (*Id.* at 14).

Defendants' brief initially appears to seek dismissal of all of Plaintiff's ADA claims, including his claims for denial of access to assistive devices in the law library and blind mail, on the grounds that "[Plaintiff] has not alleged that he was denied *meaningful* access to prison services or programs, and because he does not allege that he actually requested any particular accommodation and was subsequently denied such accommodation." (Def. Br. 16 (emphasis added)). One page later, Defendants qualify this argument: "Plaintiff alleges that he was denied numerous accommodations…. Other than with respect to Plaintiff's allegations regarding the law library and blind mail however, Plaintiff fails to allege that he was prevented from participating in or benefitting from prison programs because of his disability." (*Id.* at 17). And one page after that,

Defendants qualify their argument even further: "[A]part from assistive devices in the law library, nowhere in the Complaint, or any other part of his pleadings, does he allege that he actually requested the accommodations which he alleges he was denied." (*Id.* at 18).

Therefore, specifically as to assistive devices in the law library, the Court understands Defendants to acknowledge that Plaintiff has adequately alleged that he actually requested the accommodations he was denied. Nonetheless, Defendants argue that Plaintiff's ADA claim should fail because, in Defendants' view, Plaintiff has not adequately alleged that he was denied *meaningful* access to prison services or programs. (*See* Def. Br. 18 (asserting that Plaintiff has failed adequately to plead a denial of "*meaningful* access to prison services or programs" (emphasis added)); *see also id.* at 19).

The Second Circuit has explored the intersection of the ADA concepts of "reasonable accommodation" and "meaningful access" in the prison context in *Wright* v. *New York State Department of Corrections*, 831 F.3d 64, 73-76 (2d Cir. 2016). The plaintiff in that case was confined to a wheelchair; he challenged the mobility assistance program implemented state-wide by the New York State Department of Corrections and Community Supervision ("DOCCS"), which program, among other things, contained a blanket proscription on motorized wheelchairs. *Id.* at 68. Ultimately, the Court concluded that genuine disputes of fact remained concerning whether the program provided meaningful access to DOCCS services, and whether allowing the plaintiff to use a motorized wheelchair would amount to an undue burden to prison officials. *Id.* at 68-69.

16

More broadly, the Court found that a blanket ban, without any individualized inquiry, violated the ADA and the Rehabilitation Act. *Id.*

The *Wright* Court explained the obligation of prison officials to provide meaningful access to prison programs and services:

> A reasonable accommodation must provide effective access to prison activities and programs. That is, the accommodation must overcome structural impediments and non-trivial temporal delays that limit access to programs, services, and activities. An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him. In short, providing meaningful access requires just that — granting inmates *meaningful* participation in prison activities and programs.

831 F.3d at 73 (internal citations omitted); *see id.* at 75 ("While we are sensitive to the fact that prisons are unique environments with heightened security and safety concerns, because the ADA and RA 'unmistakably' apply to State prisons and prisoners, DOCCS is statutorily required to ensure that all of their inmates, including [the plaintiff], have the opportunity effectively to access the services and programs DOCCS provides." (internal citations omitted)).

Viewed through the lens of *Wright*, the Court finds that Plaintiff has adequately stated a claim under the ADA based on the lack of assistive devices in the law library. Plaintiff repeatedly requested, and was denied, reasonable accommodations for visually impaired persons to access the law library. These denials impeded, if not outright prevented, Plaintiff from using the law library. And the law library is a vital public service, which Plaintiff was denied the opportunity to participate in and benefit from as a result of his disability. *See*

*Pa. Dep't of Corr.* v. *Yeskey*, 524 U.S. 206, 210-11 (1998) (holding that a state prison's law library constitutes a public service under the ADA). Defendants' motion to dismiss that portion of Plaintiff's claim is therefore denied. *See Phelan* v. *Thomas*, 439 F. App'x 48, 51 (2d Cir. 2011) (summary order) (reversing dismissal of *pro se* complaint, finding that plaintiff "has alleged specific facts to show that he is an ADA-covered individual; that he was excluded from participation in mental health, library, and other services at the prison, and suffered retaliation when he attempted to complain about his treatment; and that the alleged discriminatory treatment and retaliation were due to his disability"); *cf. Carrasquillo* v. *City of New York*, 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004) (dismissing ADA claim alleging, in part, that plaintiff was housed far from prison library, because of failure to allege that plaintiff "was prevented from participating in or benefiting from prison programs and services because of his disability").

### ii.    Certain of Plaintiff's Housing-Related ADA Claims Survive

Plaintiff also argues a variety of housing-related ADA claims, including claims that he "remain[ed] in general population, without any mobility guide, blind stick, [or] social worker, while forced to court without any handicap accessibility transportation." (Pl. Opp. 6; *see id.* at 3 (citing deficiencies regarding "transportation, video court, social worker, medical staff, free matter for the blind postage, closure of dorm"); *see also* Compl. ¶ 35 (claiming denial of access to services for the blind from the U.S. Postal Service); Mar. Supp.

Compl. ¶ 10 (citing deficiencies regarding "mobility guide, social worker, or information on Reasonable Accommodations within facility should have consisting of, free matter for the blind mail, mobility guide, Blind cane, video Court, and devices within facility law library, corrective lenses, social worker, phone system, large lettering commissary purchases, Braille courses" (emphases deleted)).

As to most of these allegations, Defendants contend that the Complaint fails to allege that Plaintiff was denied an opportunity to participate in, or benefit from, programs and services due to his disability. (*See* Def. Br. 17 (arguing the Complaint does not allege that Plaintiff was "prevented from accessing any prison service because of his disability, or because he was not provided an accommodation")).[8] Moreover, according to Defendants, the Complaint fails to allege that Plaintiff "actually requested the accommodations which he alleges he was denied." (*Id.* at 16-17; *see also* Def. Reply 9 ("Plaintiff fails to allege that he ever requested a longer cane when he realized the cane provided was allegedly inadequate ... and Plaintiff fails to allege any facts showing that being housed in general population and having to ride a general population bus denied him access to prison services, programs, or activities.")). Again, Defendants assert that "[w]ithout a request for a particular accommodation, there can be no denial of said accommodation." (Def. Br. 18; *see also* Def. Reply 8 ("Plaintiff's ADA claims should fail because he has not

---

[8]     Defendants understandably focus on the Complaint, not realizing that the Court would accept Plaintiff's later submissions as supplemental pleadings. To be fair, the Court has considered Defendants' challenges to the entirety of Plaintiff's pleadings.

alleged that he was denied meaningful access to prison services or programs, and because he does not allege that he actually requested any particular accommodation and was subsequently denied such accommodation.")). Plaintiff responds that Defendants had an obligation to provide proper housing and "reasonable accommodations," and, further, that "[i]t is not mandated that plaintiff have to ask for these accommodations[.]" (Pl. Opp. 3).

Defendants are correct that "to be denied a reasonable accommodation, an individual must first request that accommodation." (Def. Reply 9).[9] *See Graves*, 457 F.3d at 184. From Plaintiff's pleadings, including exhibits that were filed after briefing on the motion closed, the Court discerns that Plaintiff contemporaneously requested a mobility guide, a change of housing, and handicapped-accessible transportation, but that he did not request the other programs or services of which he now claims to have been deprived. (*See, e.g.*, Compl. ¶¶ 31 ("The Plaintiff had to repeatedly sign up for sick-call and filed complaints to try and get properly housed in handicap housing, and every time he was transported via bus, instead of the para van transport that DOCS was obligated to transport him on[.]"), 90-92 ("Plaintiff is a 'legally blind' individual in accordance to law, as well as a qualified individual with a disability who defendants refused to place in handicapped housing[.]"), Ex. 1 (grievance

---

[9]    Defendants rely on *Colon* v. *New York State Department of Corrections and Community Supervision*, which they argue dismissed an ADA claim for failure to allege that the accommodation was actually requested and denied. (Def. Reply 9). This is not an entirely accurate characterization of the holding in *Colon*, which, more precisely described, dismissed the plaintiff's complaint for failure to allege the denial of an accommodation that was more reasonable than the one actually provided. *Colon* v. *N.Y.S. State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432 (NSR), 2017 WL 4157372 at *7 (S.D.N.Y. Sept. 15, 2017).

forms); Mar. Supp. Compl. ¶ 8 (recounting use of daily sick calls and repeated complaints while housed in SRG to obtain change in housing); Apr. Supp. Compl. ¶ 11 ("Medical staff under Health and Hospital failed to place plaintiff in disable[d] unit before and after specialist determined such placement was appropriate, coupled by returning plaintiff into same unit after plaintiff was seen by specialist was not provided with any reasonable accommodations clearly violated Title [II] of the ADA[.]")).[10] With respect to those putative reasonable accommodations that Plaintiff does not allege he ever requested — specialized postal services, a differently-sized mobility cane, corrective lenses, a social worker, large-lettering commissary purchases, and Braille courses — Plaintiff's ADA claims are dismissed.

As to the claims that remain, the Court considers the extent to which denial of these accommodations may have impeded Plaintiff's "opportunity to participate in or benefit from defendants' services, programs, or activities[.]" *Henrietta D.*, 331 F.3d at 272. With respect to the mobility guide and the change in housing, the Court finds at this stage in the litigation that Plaintiff has alleged viable claims under the ADA and the Rehabilitation Act. Indeed, the Court views these two potential accommodations as two sides of the same coin, namely, assisting Plaintiff in navigating his housing placement. The

---

[10]    In making this determination, the Court has considered *both* the grievance forms that Plaintiff attached to his pleadings, as well as any allegations in Plaintiff's pleadings that he requested a particular accommodation (as opposed to allegations that Plaintiff was not provided proactively with accommodations that he did not request, such as corrective lenses or Braille courses).

Court in *Wright*, in the context of a summary judgment motion, allowed

analogous housing access claims to go forward, finding that

> On this record, we cannot determine that DOCCS's
> accommodations are plainly reasonable and effectively
> provide [the plaintiff] meaningful access to prison
> programs, benefits, and services because there is
> evidence that indicates the mobility assistance
> program fails to allow [the plaintiff] to move freely
> throughout the DOCCS facility and discourages his
> participation in prison activities.

831 F.3d at 73; *see also id.* at 73-74 (refusing to find, as a matter of law, that

mobility aides sufficed as a reasonable accommodation, observing that "the

mobility assistance program, in practice, is ineffective because it requires [the

plaintiff] to seek out and rely upon the cooperation of other inmates").  With

respect to the current motion to dismiss (as distinguished from *Wright*'s

summary judgment setting), the Court has an underdeveloped record

concerning the reasonable accommodations provided at OBCC and NIC and the

undue burdens, if any, of granting Plaintiff's requests for accommodations.

Accordingly, these claims survive.[11]

The same cannot be said for Plaintiff's requests for accommodations in

transportation.  Plaintiff does not contend that he was denied access to any

prison programs or services because of his transportation on general

population buses; that his ability to access any programs or services was in

any way impaired because of the use of these buses; or that he was in any way

---

[11]     The Court observes, for example, that Plaintiff's requests for "handicap housing" appear
to have been denied because of the absence of available housing.  The Court is also
unaware of any available accommodations provided in the medical units at NIC, or how
such accommodations would compare with dedicated housing for disabled inmates.
Such issues will undoubtedly be fleshed out in discovery.

dissuaded from using the general population buses.  Instead, Plaintiff states only that he was transported to these programs and services in a regular bus, rather than a "para van transport with the shoulder strap."  (Dec. Supp. Compl. at 30).  These allegations do not suffice to state a claim under the ADA or the Rehabilitation Act.

### iii. Plaintiff's Claims for Non-Compliance with ADA Guidelines and Contempt of Court Are Dismissed

As a third category of ADA claims, Plaintiff alleges that DOC has failed to comply generally with ADA Guidelines and is in contempt of various consent decrees and settlement agreements.  (Compl. ¶¶ 41-59, 94-97).  To the extent Plaintiff raises them as civil rights violations, the claims fail.  "The remedy for breach of [a consent decree] is a suit for breach of contract or enforcement of the decree through judicial sanctions, including contempt, not an action under § 1983."  *Batista* v. *Rodriguez*, 702 F.2d 393, 398 (2d Cir. 1983).  Plaintiff has not adequately pleaded a claim for violation of any court decree or settlement. *See Milburn* v. *Coughlin*, No. 79 Civ. 5077 (LAP), 2007 WL 2815640, at *3 (S.D.N.Y. Sept. 24, 2007) (outlining pleading standards).

These claims also fail under the ADA and the Rehabilitation Act.  As Defendants observe, Plaintiff "fails to allege that he suffered any injury related to the alleged" breaches of the consent decrees and settlement agreements, and, indeed, "fails even to allege that the noncompliance issues ... pertained to his disability or that his disability required accommodations in these contexts." (Def. Br. 20).  The ADA Guidelines referenced in Plaintiff's pleadings primarily concern wheelchair accessibility and hearing accessibility.  (*See, e.g.*, Compl.

¶¶ 37-59, 97).  Plaintiff has not alleged that he used a wheelchair, or that he required accommodations for a hearing impairment, at any point during the relevant period.  Accordingly, to the extent that Plaintiff's claims of non-compliance with ADA Guidelines address any accommodations other than those for which he was eligible as a result of his disability, those claims are also dismissed.

### 3.    Plaintiff's Constitutional Claims Are Dismissed

#### a.    Plaintiff's First Amendment Claim for Denial of His Right of Access to the Courts Is Dismissed

The Court now turns to Plaintiff's constitutional claims, brought under 42 U.S.C. § 1983.  "[Section 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Okla. City* v. *Tuttle*, 471 U.S. 808, 816 (1985).  To plead a claim under § 1983, a plaintiff must show "[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis* v. *Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Plaintiff's claims of law library deficiencies are also presented as deprivations of his First Amendment right to access the courts.  In *Bounds* v. *Smith*, the Supreme Court held that prisoners' "constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S.

817, 828 (1977).  To state a claim for denial of access to the courts, an inmate must:

> demonstrate that the alleged shortcomings in the library … hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis* v. *Casey*, 518 U.S. 343, 351 (1996).  In other words, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

Moreover, the right of access extends solely to certain types of legal claims — specifically, "direct appeals from the convictions for which [the inmates] were incarcerated" and civil rights actions to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354 (internal citations and quotation marks omitted).  "The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355; *see generally Grullon* v. *City of New Haven*, 720 F.3d 133, 142 (2d Cir. 2013) ("Allegations that a prisoner or detainee was denied meaningful access to the courts, leaving him unable to assert an allegedly legitimate legal claim … have been held sufficient to withstand a motion to dismiss for failure to state a claim on which relief can be granted." (internal citations omitted)); *Guarneri* v. *West*,

495 F. App'x 142, 144 (2d Cir. 2012) (summary order) ("Although prisons must provide inmates the means to ensure a reasonably adequate opportunity to access the courts, a prisoner claiming denial of such access must demonstrate that the prison hindered his efforts to pursue a non-frivolous legal or administrative action." (internal citations omitted)).

"[T]he right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts. However, the two rights are not the same." *Benjamin* v. *Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). The Second Circuit has since clarified that the provision of counsel may obviate a claim of denial of access to the courts. In *Bourdon* v. *Loughren*, 386 F.3d 88 (2d Cir. 2004), the Second Circuit affirmed the dismissal of a complaint alleging violation of the right of access to the courts by the denial of reference material in a jail law library, and inadequate law library facilities, because the plaintiff was represented by counsel and "the appointment of [that] counsel satisfied the state's obligation to provide access to the courts[.]" *Id.* at 89-90. *Bourdon* "explicitly h[e]ld that the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners … with access to the courts[.]" *Id.* at 94; *see also Spates* v. *Manson*, 644 F.2d 80, 85 (2d Cir. 1981) (holding that "where state-financed legal assistance is available," a prisoner does not have "a right to state-financed library resources"); *Black* v. *Kurtz*, No. 16 Civ. 3941 (BMC)(RLM), 2016 WL 4536869, at *1 (E.D.N.Y. Aug. 30, 2016) (concluding that plaintiff had failed adequately to plead an "actual injury" required to state a claim for denial

of access to courts because plaintiff had been successful in having his criminal case dismissed, and because he had been represented by counsel in the criminal matter); *Hayes* v. *Cty. of Sullivan*, 853 F. Supp. 2d 400, 436 (S.D.N.Y. 2012) ("[C]ourts within the Second Circuit have consistently held that a state is not constitutionally obligated to provide a pretrial detainee with additional legal resources, such as a law library, when that detainee is already represented by counsel." (internal citation, quotation, and alterations omitted)).

Here, Plaintiff argues that "his inability to utilize any devices within the facility law library so prejudiced him in meaningful access to the courts[.]" (Pl. Opp. 13, 16-17). Plaintiff claims as well that the denial of free postage for blind mail also violated his right of access to the courts. (*Id.* at 4, 13-17). The following sections of Plaintiff's pleadings, liberally construed, provide additional allegations relevant to his access-to-courts claim:

- Plaintiff's March Supplemental Complaint alleges that, in addition to his difficulty accessing the law library, Plaintiff's own counsel failed to provide him with discovery documents, and fabricated criminal charges against him. (Mar. Supp. Compl. ¶¶ 2, 24-25). Because of the law library deficiencies, Plaintiff was rendered unable "to obtain documents in [his] criminal proceedings aside from what his defense attorney verbally explain[ed.]" (*Id.* at ¶ 23). As a result, Plaintiff alleges that he was unable "to examine documents[,] file motions, or unable to receive discovery[.]" (*Id.* at ¶ 27). "Plaintiff experience[d] denial in receiving discovery though [his] entire proceedings[.]" (*Id.* at ¶ 36).

- Plaintiff's December Supplemental Complaint adds that the denial of reasonable accommodations in the law library resulted in a "denial of meaningful access to the courts during a critical stage of his criminal

proceedings weeks before hearing and trial." (Dec. Supp. Compl. at 6).[12]

Plaintiff's briefing identifies three purported injuries caused by the alleged denial of access to the law library. *First*, it "hinder[ed Plaintiff] in being effective resulting in accept[ance] of [a] guilty plea … [that] has now been render[ed] as not knowingly, voluntarily and intelligently accepted." (Pl. Opp. 13).

*Second*, Plaintiff complains that his motion to set aside his sentence as illegal and the product of ineffective representation, which motion was filed in state court pursuant to New York Penal Law § 440.20 (the "440.20 Motion"), "was denied due to failure to controvert these allegations during criminal proceedings which plaintiff challenged *due to his inability to see and properly research his criminal proceedings*[.]" (Pl. Opp. 15 (emphasis added)). In support, Plaintiff attaches a copy of the 440.20 Opinion issued on May 30, 2018, from the trial court in Kings County, denying Plaintiff's 440.20 Motion. (*Id.*, Ex. A (the "440.20 Opinion")).

*Third*, Plaintiff claims that his difficulties accessing the law library "denied [him] the opportunity to research important constitutional violations now raised in motions." (Pl. Opp. 14). As to this third purported injury, Plaintiff's March Supplemental Complaint presents additional relevant

---

[12] Plaintiff's April Supplemental Complaint contains a more fundamental claim that appointed counsel are not trained properly to represent visually impaired criminal clients. (*See, e.g.*, Apr. Supp. Compl. ¶¶ 1-2). This challenge does not fit within any of the legal claims raised by Plaintiff in his initial Complaint, and it will not be addressed by the Court.

allegations regarding an earlier lawsuit that Plaintiff filed pursuant to 42 U.S.C. § 1983 against the arresting officers:

> [Plaintiff's] claim was dismissed on the grounds that it was not filed or served within the time frame prescribed.... However, it was due to the delay of the Office of the District Attorney, in providing the video tape, coupled with the Public Defenders' derelict of duty in obtaining the video in a timely manner [that] plaintiff was unable to file the 1983 claim before the Court. This denial of the 1983 action on statute of limitations ground clearly is an injury caused by the parties. This inability to utilize the law library [caused Plaintiff the injury of] not knowing that the courts may not grant such applications unless [he moved for] tolling[.]

(Mar. Supp. Compl. ¶¶ 32-33). Plaintiff attaches a letter, dated July 7, 2017, in which he advised the Department of Justice ("DOJ") that he was facing a charge of robbery, and that his public defender "[i]nform[ed] [the Civilian Complaint Review Board, or "C.C.R.B."] not to [discuss] my case in which I want them to investigate my case of assault." (*Id.*, Ex. 1). In the letter to DOJ, Plaintiff asked for "a lawyer that will properly represent my case as a whole as well as charges being brought on police officers for assaulting me." (*Id.*).

Defendants make two arguments in opposition. To start, they assert that the 440.20 Opinion undermines Plaintiff's allegations of injury in the making of his 440.20 Motion — both because it establishes that Plaintiff submitted the motion on March 29, 2018, long after Plaintiff had been transferred from DOC custody on September 14, 2017, and because it dismissed Plaintiff's motion on the merits rather than on procedural grounds. (Def. Reply 6). The Court concurs, and observes as well that the state-court judge who issued the 440.20

Opinion found no infirmities in Plaintiff's guilty plea proceeding, while also finding that Plaintiff's counsel was effective for purposes of the Sixth Amendment and the New York State Constitution. (Pl. Opp., Ex. A). *See generally* 28 U.S.C. § 1738 (noting that the acts, records, and judicial proceedings of a state "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken"); *Allen* v. *McCurry*, 449 U.S. 90, 103-04 (1980) (recognizing issue preclusion for civil and criminal state court decisions in action brought under 42 U.S.C. § 1983); *Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984) ("Having rejected in *Allen* the view that state-court judgments have no issue preclusive effect in § 1983 suits, we must reject the view that § 1983 prevents the judgment in petitioner's state-court proceeding from creating a claim preclusion bar in this case.").[13] Accordingly, the Court finds that Plaintiff has not adequately alleged injury in the form of either an unknowing, involuntary, or unintelligent plea, or in the form of any impediment to his 440.20 Motion.

---

[13] The doctrine of issue preclusion (also known as collateral estoppel) relitigation of an issue when "[i] the identical issue necessarily was decided in the prior action and is decisive of the present action, and [ii] the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citations omitted). On the specific issues of the validity of Plaintiff's plea and the effectiveness of his counsel, the Court finds that all of the requirements for issue preclusion are satisfied.

The related doctrine of claim preclusion requires "[i] a final judgment on the merits, [ii] by a court of competent jurisdiction, [iii] in a case involving the same parties or their privies, and [iv] involving the same cause of action." *EDP Med. Computer Sys., Inc.* v. *United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal citation omitted); *see also Marcel Fashions Grp., Inc.* v. *Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015).

Defendants' second argument is that Plaintiff's access-to-courts claims "are without merit because it is clear that Plaintiff was represented by counsel at all times relevant to the instant action." (Def. Reply 6). Further, Defendants argue that "Plaintiff does not allege that Defendants in any way interfered with his access to *counsel*, he only alleges that he was experienc[ing] difficulties using the law library." (*Id*.). The record only partially supports Defendants' position.

The 440.20 Opinion establishes that Plaintiff received the effective assistance of counsel during his criminal proceedings for purposes of the Sixth Amendment and the New York Constitution. (Pl. Opp., Ex. A at 5-6). And Defendants are correct that effective assistance "is a permissible and sufficient means of satisfying the right of access to the courts[.]" *Bourdon*, 386 F.3d at 96. However, that same Opinion makes clear that Plaintiff's 440.20 Motion was *pro se*. (Pl. Opp., Ex. A at 1). And Plaintiff's March Supplemental Complaint alleges that the public defender who acted as his counsel for purposes of his criminal proceedings actually obstructed Plaintiff's § 1983 claim by [i] instructing the C.C.R.B. not to investigate, and [ii] failing to provide Plaintiff with discovery. (*See* Mar. Supp. Compl. ¶¶ 32-33, Ex. 1). Plaintiff's access to counsel for his criminal proceedings does not obviate his claim that he was denied access to courts in filing his § 1983 assault and battery claim.

In consequence, the Court considers whether impediment of a § 1983 claim for assault by arresting police officers qualifies an injury that can establish standing for a claim for denial of access to the courts. The Court

finds that it does not. *Lewis* limits standing for such claims to denial of the tools that "inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. *Lewis* further explains that "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original). To be sure, prior to both *Lewis* and *Bounds*, the Supreme Court expressly expanded the right of access to the courts from habeas petitions to "civil rights actions … to protect basic constitutional rights." *See Wolff* v. *McDonnell*, 418 U.S. 539, 579 (1974), *quoted in Lewis*, 518 U.S. at 354-55. Yet, *Lewis* unequivocally limits the entitlement for civil rights actions to those challenging the conditions of confinement. *Lewis*, 518 U.S. at 354; *see also Kowalyshyn* v. *Willett*, No. 10 Civ. 752 (SRU), 2011 WL 1793257, at *4 (D. Conn. May 11, 2011) ("[P]risoners are entitled to legal assistance to file civil rights actions only to the extent that those actions challenge the conditions of their confinement." (collecting cases)); *Collins* v. *Goord*, 438 F. Supp. 2d 399, 417 (S.D.N.Y. 2006) (concluding that "an Article 78 petition that challenges an inmate's remand to SHU confinement is an action for which access to the courts is constitutionally guaranteed"). In light of legal developments since *Bounds*, Plaintiff's allegations regarding his § 1983 action are not sufficient to state a constitutional claim for denial of access to the courts.

While it is not necessary to its decision, the Court pauses to note one further flaw in Plaintiff's access-to-court claims concerning his § 1983 action:

they are demonstrably false. Plaintiff claims that his § 1983 action was dismissed as untimely. (*See* Mar. Supp. Compl. ¶¶ 32-33). It was not. Plaintiff filed his complaint in this District on or about August 22, 2017, and it was transferred to the United States District Court for the Eastern District of New York on venue grounds on or about August 25, 2017. (*See Walker* v. *Raja*, No. 17 Civ. 6434 (CM) (S.D.N.Y.), Dkt. #1, 4; *Walker* v. *Raja*, No. 17 Civ. 5202 (PKC) (LB) (E.D.N.Y.)). According to the E.D.N.Y. docket, the case was stayed for several months while the C.C.R.B. completed an investigation into claims of officer misconduct. (*See, e.g.*, No. 17 Civ. 5202, Dkt. #36 (stay order entered April 18, 2018), 51 (order lifting stay entered August 7, 2018)). According to the most recent docket entries, the parties are discussing potential motion practice or trial. (*See, e.g.*, No. 17 Civ. 5202, Dkt. #83 (defendants' letter motion dated February 1, 2019, regarding contemplated motion for summary judgment)).[14]

For all of the reasons discussed in this section, Plaintiff's claims of deprivation of his First Amendment right to access the courts are dismissed.

### b. Plaintiff's Fourteenth Amendment Claims Are Dismissed

#### i. Plaintiff Has Not Stated a Claim for Deliberate Indifference to Serious Medical Needs

Plaintiff also raises several claims under the Fourteenth Amendment, beginning with challenges to the medical care he received at Rikers Island.

---

[14]     To the extent that Plaintiff is referencing a failure on his part to file a notice of claim within the 90-day window specified in N.Y. Gen. Mun. Law § 50-e, the fact remains that as of the date of this Opinion, his state-law claims in the E.D.N.Y. have not been dismissed.

Courts in the Second Circuit analyze a pretrial detainee's claims of unconstitutional conditions of confinement, such as inadequate medical care, under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see generally Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *3 (S.D.N.Y. Feb. 5, 2018). Nevertheless, "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere* v. *Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

A claim for inadequate medical care requires a showing of "deliberate indifference to ... serious medical needs," which in turn requires proof of two elements: "medical need" and "deliberate indifference." *Smith* v. *Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element, "medical need," is objective, measuring "the severity of the alleged deprivation." *Id.* Courts assessing this prong "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause" the plaintiff. *Salahuddin*, 467 F.3d at 280. Factors informing this analysis include "[i] whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' [ii] whether the medical condition significantly affects daily activities, and [iii] 'the existence of chronic and substantial pain.'" *Brock* v. *Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). In addition,

"the actual medical consequences that flow from the alleged denial of care will be highly relevant[.]" *Smith*, 316 F.3d at 187.

The Second Circuit has clarified that the second element, "deliberate indifference," though often characterized as "subjective," is better understood as an element simply analyzing *mens rea* because it is "defined objectively." *Darnell*, 849 F.3d at 29, 35. Indeed, this element requires proof that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. This standard therefore does not encompass "an inadvertent failure to provide adequate medical care[.]" *Estelle* v. *Gamble*, 429 U.S. 97, 105-06 (1976).

Plaintiff alleges inadequate medical care in the forms of failure "to employ proper medical techniques, or adequate medical person[nel]," and failure "to exercise professional judgment in diagnosis of his condition." (Mar. Supp. Compl. ¶ 16). Plaintiff argues, and the Court agrees for purposes of this motion, that several medical conditions that he identifies along with his blindness qualifies, in the aggregate, as a "serious medical need[]." (Pl. Opp. 9-10; *see also id.* at 12 (identifying "loss of sight, broken finger[,] contusion of left leg, lacerations stitches of right leg, [and] fever"). And the Court also accepts for purposes of this motion Plaintiff's contention that medical staff and correctional officers prevented him "from receiving recommended treatment" for

35

this serious medical need. (*Id.* at 10). Defendants argue nonetheless that Plaintiff has failed to state a claim for deliberate indifference because the pleadings "do[] not allege that any defendant was deliberately indifferent to a sufficiently serious condition." (Def. Br. 5). The Court agrees.

Plaintiff's pleadings fail to allege any unreasonable denials of proper medical care, or any deterioration or worsening of any of Plaintiff's conditions, that resulted from a denial of proper medical care. Plaintiff does not allege that he was ever denied medical treatment (although the Court wishes the delay in receiving treatment were shorter than that alleged), and "does not allege facts showing any negative consequence resulting from any alleged inadequate or delayed medical treatment." (Def. Reply 2). To the contrary, the Complaint indicates that Plaintiff was diagnosed with advanced glaucoma prior to his arrest, and that, while in custody, he received care for this condition from a specialist, while receiving frequent medical treatment for the injuries to his finger and leg. (*See* Compl., Ex. 1 at 16-17). As a result, Plaintiff has failed adequately to plead deliberate indifference to serious medical needs under the Fourteenth Amendment.

### ii. Plaintiff Has Not Stated a Claim for Violation of DOC Internal Procedures

Plaintiff also tries, without success, to establish a constitutional violation from DOC's alleged failure to abide by its own internal policies and procedures. "[T]he failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim." *Rivera* v. *Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002). Therefore, to the extent that the Complaint

alleges violations of constitutional rights predicated on Defendants' non-compliance with internal policy (*see* Compl. ¶¶ 28-30), those portions of Plaintiff's Complaint do not state a claim under the Fourteenth Amendment.

### iii. Plaintiff Has Not Stated a Claim Relating to His Conditions of Confinement at Rikers Island

As a third argument under the Fourteenth Amendment, Plaintiff claims that Defendants failed to protect him while he was detained at Rikers Island. It "is a Fourteenth Amendment violation where [an] officer acted with deliberate indifference to a substantial risk of serious harm to an inmate." *Rosen* v. *City of New York*, 667 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2009) (citing *Farmer* v. *Brennan*, 511 U.S. 825, 828 (1994)) (internal quotation marks omitted). Accordingly, to state a constitutional claim for failure to protect based on conditions of confinement, an "inmate must show [i] that the failure to intervene or protect the inmate was sufficiently serious such that it caused an unquestioned and serious deprivation of basic human needs and [ii] that the defendant acted with a sufficiently culpable state of mind." *Corley* v. *City of New York*, No. 14 Civ. 3202 (GHW), 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (internal citation and quotation marks omitted). "[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific [physical] injury is alleged." *Johnson* v. *Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (summary order).

Here, Plaintiff argues that unsafe conditions of confinement deprived him of his "constitutional right to be reasonably protected from constant threats of violence and sexual assault from other inmates[.]" (Pl. Opp. 11). He alleges

that corrections officers "[f]ailed to reasonably protect him from constant threats of violence and exercise preventive measures from potential assaults from other inmates while legally blind being housed inside general population housing." (*Id.*). Plaintiff argues that other inmates, who were gang members, prevented him from using the bathroom or the phone, caused him "extreme difficulty" in showering, navigating his environment, and identifying persons around him, and stole his personal belongings. (*Id.*). And Plaintiff contends that these inmates "received cooperation from individual correction officers[.]" (*Id.*).

Defendants correctly observe that Plaintiff has failed to show a "substantial risk of serious harm because Plaintiff has not alleged any facts showing an imminent or actual harm, physical violence, violence of any kind, or any threats more than mere verbal harassment." (Def. Br. 10). It is true, as Plaintiff claims and Defendants concede, that Plaintiff "does not need to wait until he is actually assaulted before obtaining relief." (*Id.* (citing *Woodhous* v. *Virginia*, 487 F.2d 889, 890 (4th Cir. 1973))). However, the Complaint nonetheless fails to allege any facts supporting a reasonable inference that the prison conditions described created a substantial risk of serious harm. (*See* Def. Reply 2). Further, Plaintiff has failed to allege with particularity that any Defendant acted with a culpable state of mind, as he has failed to allege that any Defendant knew or should have known of an imminent risk of harm to his safety from his placement for 12 days in SRG housing. (*See* Def. Br. 11). This claim, too, is dismissed.

### c.     Plaintiff's Retaliation Claims Under the First and Fourth Amendments Are Dismissed

Plaintiff fares no better recasting certain of his claims as ones for retaliation.  To state a First Amendment claim for retaliation, a Plaintiff must show "[i] that the speech or conduct at issue was protected, [ii] that the defendant took adverse action against the plaintiff, and [iii] that there was a causal connection between the protected speech and the adverse action." *Dolan* v. *Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal citation and quotation marks omitted).

Plaintiff alleges that, "[i]n retaliation for [his] complaints, grievances defendants denied him handicapped housing, denied him reasonable accommodations, increasingly hindered [his] access to handicap housing and assistance devices and auxiliary aids, and adequate medical care."  (Compl. ¶ 77).  This bare assertion, without more, does not adequately state a claim for First Amendment retaliation.  (*See* Def. Br. 11-12).[15]  Even if it did, Plaintiff has failed to plead any facts that could support an inference of a causal connection between his filing of complaints and grievances, and the alleged retaliation. And the conclusory assertion that Defendants acted in retaliation for Plaintiff's grievance filings is not sufficient to plead a First Amendment claim.  *See Iqbal*, 556 U.S. at 678.

---

[15]     Indeed, the assertion undercuts the remainder of Plaintiff's pleadings:  Plaintiff has alleged that these deficiencies were present from the very beginning of his detention at Rikers Island, and *not* that they were precipitated or aggravated by any protected speech on Plaintiff's part.

In sum, Plaintiff has failed to state a claim for constitutional violations under the First or Fourteenth Amendments. And while Plaintiff suggested a Fourth Amendment claim in his Complaint (*see* Compl. ¶¶ 11, 75), there are no allegations regarding same in any of his pleadings, and his opposition memorandum does not mention the Fourth Amendment (*see generally* Pl. Opp.). The Court does not consider Plaintiff to have alleged a Fourth Amendment claim. Because Plaintiff has failed to plead a viable claim under 42 U.S.C. § 1983, the Court need not address subsidiary issues concerning individual liability or *Monell* liability.

### 4. Plaintiff's Claims for Compensatory Damages Under the PLRA Are Dismissed

Section 803(d)(e) of the Prison Litigation Reform Act of 1996 (the "PLRA") mandates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). In this Circuit, plaintiffs may bring an action under the PLRA for *punitive* damages for purely mental or emotional injury. *Thompson* v. *Carter*, 284 F.3d 411, 418-19 (2d Cir. 2002). However, claims for *compensatory* damages under the PLRA are generally barred unless a plaintiff also alleges physical injury. *See Leneau* v. *Ponte*, No. 16 Civ. 776 (GHW), 2018 WL 566456, at *17 (S.D.N.Y. Jan. 25, 2018), *appeal dismissed* (July 16, 2018); *but cf. Holland* v. *City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) ("However, although the PLRA bars compensatory damages 'for mental or

emotional injury,' even absent physical injury, [the plaintiff] may still recover 'compensatory damages for the loss of a constitutional liberty interest.'"); *Rosado* v. *Herard*, No. 12 Civ. 8943 (PGG), 2014 WL 1202513, at *13 (S.D.N.Y. Mar. 25, 2014) ("[C]ourts in this Circuit have concluded that a physical injury is not required for a prisoner to recover compensatory damages for the loss of a constitutional liberty interest." (citing *Kerman* v. *City of New York*, 374 F.3d 93, 125 (2d Cir. 2004))); *Lipton* v. *County of Orange, N.Y.*, 315 F. Supp. 2d 434, 457-58 (S.D.N.Y. 2004) (discussing "an exception to the aforementioned PLRA preclusion of compensatory damages in the absence of physical injury that is applicable to cases wherein the constitutional right that is allegedly violated arises under the First Amendment").[16]

Defendants are correct that Plaintiff has failed to allege "any physical injury as a result of the alleged conditions of confinement, the alleged failure to protect, the alleged delay in medical treatment or any other constitutional tort." (Def. Br. 21). Therefore, to the extent Plaintiff seeks compensatory damages under the PLRA, his claims are dismissed.

### 5. The Court Continues to Exercise Jurisdiction over Plaintiff's State-Law Claims

As Defendants point out, the Court has discretion to decline to exercise supplemental jurisdiction over state-law claims that remain once all federal law claims have been dismissed. *Kolari* v. *New York-Presbyterian Hosp.*, 455 F.3d

---

[16]     The Second Circuit has not specifically addressed the interplay between the ADA and the PLRA, but other Circuits have concluded that the ADA does not provide an exception to the PLRA's requirement of physical harm. *See generally Flaming* v. *Alvin Cmty. Coll.*, No. CV H-17-1074 (AHB), 2018 WL 4600644, at *6 (S.D. Tex. Sept. 24, 2018) (discussing decisions from the Fifth, Seventh, and District of Columbia Circuits).

118, 121–22 (2d Cir. 2006). Here, several of Plaintiff's federal-law claims survive. Therefore, the Court will continue to exercise supplemental jurisdiction over Plaintiff's state-law claims.

### 6. The Court Will Not Permit Plaintiff to Amend His Complaint Further

Plaintiff has not sought leave to amend, and the Court will not grant such leave *sua sponte*. In recognition of Plaintiff's *pro se* status, the Court has effectively permitted him to amend his Complaint four times by accepting and considering three supplemental pleadings and an opposition memorandum of law that included updated factual, as well as legal, arguments. *Cf. Ganley* v. *City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) ("A district court should grant a *pro se* litigant leave to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). For this reason, and because the parties' submissions make clear that further amendment would be futile, the Court will not permit further amendment of Plaintiff's Complaint.

### CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims under the ADA and the Rehabilitation Act for assistive devices, a sighted guide, and changes in housing remain viable. His other claims are dismissed with prejudice. The Clerk of Court is directed to terminate the motion at docket entry 35.

Per the Court's individual rules, the parties are ORDERED to meet and confer and submit a proposed case management plan to the Court on or before **March 15, 2019**.

SO ORDERED.

Dated:      February 12, 2019
             New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

*Sent by First Class Mail to:*
Michael Walker
17-A-3801
Sullivan Correctional Facility
325 Riverside Drive
P.O. Box 116
Fallsburg, NY 12733